# COMBS *v.* UNITED STATES

No. 71–517.   Argued April 11, 1972—Decided June 26, 1972

*James N. Perry* argued the cause for petitioner.   With him on the brief was *William F. Hopkins.*

*William Bradford Reynolds* argued the cause for the United States.   With him on the brief were *Solicitor General Griswold, Assistant Attorney General Petersen, Beatrice Rosenberg,* and *Roger A. Pauley.*

PER CURIAM.

We granted certiorari on claims that evidence introduced against petitioner was obtained through an unlawful search that petitioner has standing to challenge.   The Government now suggests that the warrant authorizing the search was invalid, but that further factual deter-

minations are required to resolve the question of petitioner's standing to challenge the admission in evidence of the allegedly stolen goods seized by Government agents.

Petitioner and his father were convicted after a joint trial[1] under an indictment charging them with having violated 18 U. S. C. § 659[2] by receiving, possessing, and concealing 26 cases of tax-paid whiskey known by them to have been stolen from an interstate shipment. The Government's evidence at trial tended to show that petitioner delivered 40 cases of whiskey to the Newport, Kentucky, home of a Mrs. Ballard, who had previously expressed her willingness to buy it. The day after the delivery, Mrs. Ballard, having sold some of the whiskey but having thereafter heard that it was stolen property, telephoned petitioner and told him to remove the remainder of the whiskey from her home. Petitioner and one Martin then moved the whiskey to the home of petitioner's estranged wife; a few days later, however, petitioner telephoned Martin and told him that "the heat was on" and the whiskey would have to be moved once again. The two men then transported the whiskey to

---

[1] Both men were convicted, but petitioner's father did not appeal; another codefendant at the trial was petitioner's brother, who was acquitted on a related charge.

[2] Section 659 provides as follows:

"Whoever . . . unlawfully takes, carries away, or conceals, or by fraud or deception obtains from any . . . railroad car . . . or other vehicle, or from any . . . station house, platform or depot . . . with intent to convert to his own use any goods or chattels moving as or which are a part of . . . an interstate or foreign shipment . . . ; or

"Whoever buys or receives or has in his possession any such goods or chattels, knowing the same to have been embezzled or stolen; . . .

.          .          .          .          .

"Shall . . . be fined not more than $5,000 or imprisoned not more than ten years, or both . . . ."

Hazard, Kentucky, where they stored it in a shed on a farm owned by petitioner's father.

Sometime later, Martin told an FBI agent of the stolen whiskey; when the agent in turn passed the information on to the Kentucky state police, the latter obtained a warrant authorizing a search for, and seizure of, the whiskey at the property of petitioner's father. The warrant was supported by an affidavit, which the Government now suggests was insufficient under the holding of *Aguilar* v. *Texas,* 378 U. S. 108 (1964). Armed with that warrant, the state police went to the farm owned by petitioner's father and conducted a search, which led to the discovery and seizure of 26 cases of whiskey identified as having been stolen from a railroad shipment intended for delivery to the Michigan Liquor Control Board. Petitioner was not living on his father's property, nor was he present there when the search and seizure took place.

Prior to trial, the defendants jointly moved the District Court to suppress the whiskey from evidence on the ground that there was no showing of probable cause to support the issuance of the warrant. The District Court, following an evidentiary hearing,[3] denied the motion on the merits, and the evidence was subsequently introduced at trial. Following the conviction of petitioner and his father, only the petitioner appealed, raising the single issue of the validity of the warrant; the Court of Appeals did not reach the merits of his claim respecting the warrant, however, holding only that he lacked standing to challenge the legality of the search and seizure. 446 F. 2d 515.

In concluding that petitioner lacked such standing, the Court of Appeals noted, *inter alia,* that he had "asserted

[3] No evidence relating to petitioner's standing was introduced at the hearing.

no possessory or proprietary claim to the searched premises" during the course of the trial. 446 F. 2d, at 516. Clearly, however, petitioner's failure to make any such assertion, either at the trial or at the pretrial suppression hearing, may well be explained by the related failure of the Government to make any challenge in the District Court to petitioner's standing to raise his Fourth Amendment claim. In any event, the record now before us is virtually barren of the facts necessary to determine whether petitioner had an interest in connection with the searched premises that gave rise to "a reasonable expectation [on his part] of freedom from governmental intrusion" upon those premises. *Mancusi* v. *DeForte,* 392 U. S. 364, 368 (1968).[4] If petitioner can establish facts showing such an interest, he will have demonstrated a basis for standing to attack the search; re-examination of the validity of the warrant in light of the Government's present position on that issue would then be

---

[4] The Court in *Mancusi* relied upon *Jones* v. *United States,* 362 U. S. 257 (1960), as having done away with "the requirement that to establish standing one must show legal possession or ownership of the searched premises." 392 U. S., at 369. In *Jones,* the Court held that the petitioner then before it had standing and enunciated two rules as alternative grounds for its decision. First, the *Jones* Court ruled that the "possession on the basis of which [an accused] is to be . . . convicted suffices to give him standing under any fair and rational conception of the requirements of Rule 41 (e)," Fed. Rule Crim. Proc.; second, the Court ruled that "anyone legitimately on premises where a search occurs" has standing to challenge the legality of that search. 362 U. S., at 264, 267. The Government has urged that we take the opportunity, said to be presented by the instant case, to re-examine the first alternative holding of *Jones.* Even assuming we were disposed to do so, the Court of Appeals did not, in the opinion it filed in this case, deal with the question whether the nature of the charge against petitioner brought his case within the coverage of the first aspect of the *Jones* holding, and we decline to reach or consider issues not yet passed on by that court.

appropriate to resolve the question whether evidence of the seized whiskey was properly introduced at petitioner's trial.

Since there has not yet been any factual determination of whether petitioner had an interest in the searched premises that was protectible under the doctrine of *Mancusi* v. *DeForte,* we vacate the judgment of the Court of Appeals and remand with directions that the case be sent back to the District Court for further proceedings consistent with this opinion.

*Vacated and remanded.*

MR. JUSTICE DOUGLAS concurs in the result.