STATE of Missouri, Respondent,

v.

Sylvester E. JONES, Appellant.

No. KCD 29033.

Missouri Court of Appeals, Kansas City District.

Oct. 31, 1977.

Philip H. Schwarz, McMullin, Wilson & Schwarz, Kansas City, for appellant.

John D. Ashcroft, Atty. Gen., Jeffrey W. Schaeperkoetter, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P. J., and WELBORN and HIGGINS, Special Judges.

ANDREW JACKSON HIGGINS, Special Judge.

Appeal from conviction by a jury of two counts of robbery, first degree. Appellant

questions whether there was probable cause for a warrantless arrest; whether certain evidence and an identification should have been suppressed; whether the instruction which submitted Count I was without supporting evidence; and whether the State's opening argument contained an opinion of guilt which deprived him of a fair trial. Affirmed.

Appellant does not question the sufficiency of evidence to sustain his conviction. The record shows that a jury reasonably could find that on January 2, 1976, at about 2:45 a. m., Sylvester E. Jones and a companion, both armed with handguns, entered the lobby of the Southland Hotel, 3517 Main, Kansas City, Missouri. Jones's companion confronted Richard Kurtz, an employee, demanded money, and obtained some $60 in money and some 70 three-cent stamps belonging to Southland Hotel, Corp. (Count I.) Jones went to the adjacent television room, confronted William F. Provance, Jr., a hotel resident, demanded money, and obtained some $16 in money belonging to Mr. Provance. (Count II.) Mr. Provance was then taken to the front desk and ordered to lie face down on the floor beside Mr. Kurtz who had been similarly ordered by Jones's companion. The assailants left together with the money and property. §§ 560.120 and 560.135 RSMo 1969.

Appellant contends (I) that the cause against him should have been dismissed because he "was arrested without probable cause or reasonable grounds that he committed a felony, and without a warrant; * * * evidence used against [him] at the trial was gathered by the police as a result of the arrest."

On January 2, 1976, at about 2:45 a. m., Traffic Officer William Clark was patrolling southbound on Main Street and observed "a black vinyl over yellow Cadillac" with a Wisconsin license plate "go around a corner northbound on Main onto eastbound Armour with its lights off." He first saw the Cadillac when it was "approximately half a block" from the Southland Hotel.

He followed the Cadillac about four blocks and it "ran up over the curb and back down on the roadway." He stopped the Cadillac and when he approached it, observed three black occupants. The driver was unable to produce an operator's license but showed an "I.D." bearing the name Travis Jones. Defendant, a brother of Travis, was a passenger in the Cadillac along with another brother, Carl Jones. Officer Clark cited Travis Jones for driving without a license and took him in his police car to the Central Patrol Station at Linwood and Troost, where he intended to administer a breath test for intoxication. After his arrival at the station, Officer Clark saw defendant and Carl come in the front door, "apparently to bond their brother out." Officer Clark gave the foregoing information to Sergeant Milan Mulac and participated in a subsequent search of defendant which netted a clip of .32 caliber ammunition. Search of Carl Jones netted a large roll of bills and a handful of change. Sergeant Mulac was on duty at the Central Patrol Station on the morning of January 2, 1976. At about 2:45 a. m., he received notice over the police radio of a robbery at the Southland Hotel in the 3500 block of Main Street. The first transmission described the robbery participants as "two Negro males, one . * * * approximately 6 feet, with long black hair, wearing a long black coat. The second * * about five-eight to five-ten, with long hair, wearing a large brim black hat." A later transmission described a third participant as "a Negro male, approximately six-two, wearing a flowered and checkered coat and they were driving a black over yellow Cadillac." At about 3:00 a. m., Officer Clark brought Travis Jones to the station under arrest on traffic charges. "I thought he'd match the description of the robbery, because we just don't see that many Negroes with long, straight hair. * * * when he first brought him in, we got to talking about the arrest he had and asked where he got them." Officer Clark told him that Travis had been driving a black over yellow Cadillac. "We were preparing to adminis-

ter a Breathlizer [sic] Test to Travis Jones and two Negro males walked in the front door * * *. They both said they were brothers of Travis and they had come to make his bond." They acted abnormally and tried to appear inconspicuous. One was wearing a flowered and checkered coat, and one also had long black hair. " * * * we proceeded to the rear of the police station where the Breathlizer [sic] machine is kept. When we got back there, we arrested all three of them for the armed robbery of the Southland Hotel." A search was made of all three which netted "identification papers; a lot of cash, a roll of cash; a lot of change; a half a box of .22 caliber ammunition; some loose .32 caliber shells; and a clip of .32 caliber ammunition."

■ The foregoing demonstrates facts and circumstances within Sergeant Mulac's knowledge of which he had reasonably trustworthy information sufficient to warrant a man of reasonable caution to believe that the persons arrested had committed the crime; and, therefore, probable cause for the arrest existed. *Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *United States v. Taylor,* 428 F.2d 515 (8th Cir. 1970), cert. den. 401 U.S. 983, 91 S.Ct. 1208, 28 L.Ed.2d 335 (1971); *State v. Granberry,* 530 S.W.2d 714–724, 725 (Mo.App. 1975); *State v. Craig,* 406 S.W.2d 618, 622 (Mo.1966). The arrest, based on probable cause and therefore lawful, made lawful incident search of the arrestee and seizure of property from his person. *United States v. Heisman,* 503 F.2d 1284 (8th Cir. 1974); *State v. Masters,* 530 S.W.2d 28, 30 (Mo. App.1975).

■ Appellant cites *Whiteley v. Warden,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), to assert that his arrest was without probable cause because the police broadcast was not confirmed. That case dealt with the validity of an arrest warrant issued on information from an uncorroborated tipster; and no attempt was made to justify the arrest as a warrantless arrest. *United*

*States v. Stratton,* 453 F.2d 36, 38, fn. 5 (8th Cir. 1972). In contrast, arrests made by officers based upon information received over the police radio are valid. *State v. Granberry,* supra; *State v. Whorton,* 487 S.W.2d 865 (Mo.1972).

Appellant also cites *United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), to assert that his arrest was on the basis alone that he and his brothers were black men. The assertion ignores evidence of descriptions, the car, and the circumstances of time and place.

Appellant contends (II) that evidence of two hats, a quantity of stamps, and some .32 caliber ammunition should have been suppressed on his motion "for the reason that they were seized by the police without a valid search warrant, and not incident to the arrest of [defendant], and without [his] permission, and there were no exigent circumstances to warrant the seizure without a warrant."

■ The difficulty in appellant's contention is that the evidence in question was taken from the black over yellow Cadillac, and defendant's only connection with the Cadillac was that of a passenger in it while under the control of his brother Travis. Accordingly, appellant has not met his burden of showing that he has standing to make this contention. The prerequisite in challenging incriminating evidence seized in an allegedly unlawful search is that the person who would invoke the constitutional limitations on searches and seizures must have standing which he must establish by proof where not conceded or established by the State. This record is devoid of evidence to show any interest, ownership, or otherwise of defendant in the Cadillac to afford him standing to complain of its search. *State v. Hornbeck,* 492 S.W.2d 802, 808 (Mo. 1973); *Combs v. United States,* 408 U.S. 224, 92 S.Ct. 2284, 33 L.Ed.2d 308 (1972). See also *State v. Damico,* 513 S.W.2d 351 (Mo.1974).

Appellant cites *In re J.R.M.,* 487 S.W.2d 502 (Mo. banc 1972), to assert standing. By

contrast, however, J.R.M. met his burden to show standing to complain of the warrantless search of his father's automobile with evidence that he "had the right to use this Corvair at any time; that, in fact, he regularly drove it to school; and that he used the car much as he would have done if title had been in him. He had his own key to the car and was included in the insurance coverage thereon. Furthermore, he lived with his parents where the car was kept." 487 S.W.2d l.c. 509.

Nor is this a case of "automatic standing" in which the government cannot assert a lack of possessory interest when possession of the seized evidence is an essential element of the offense charged. See, e. g., *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

■ Appellant contends (III) that lineup and in-court identifications by William F. Provance, Jr., should have been suppressed "for the reason that the line-up was so suggestive as to taint the identification both in court and prior to trial."

Mr. Provance estimated it took his assailant in excess of two minutes to rob him. The television room in which he was robbed was lighted by a wall lamp. The robber's face was uncovered and Mr. Provance got a good look at it. After the initial assault in the television room, the robber ordered Mr. Provance to go to the front desk. During the movement the robber slapped him, at which time he was about six inches from the robber's face.

The lineup was conducted at the Kansas City Police Station at 9:00 a. m., January 2, 1976. Mr. Provance identified Sylvester Jones as the man who assaulted and robbed him earlier that morning from a lineup which, according to a picture in evidence, contained: Sylvester Jones, c/m, 33, 6′2″, 175; Travis Jones, c/m, 34, 5′5″, 120; Ronald Dorsey, c/m, 17, 5′4″, 130; Carl Jones, c/m, 35, 5′6″, 150. Mr. Provance saw Syl-

vester Jones next at the preliminary hearing and then at the time of the in-trial identification.

Appellant's claim emphasizes age and height dissimilarities between the lineup participants, the extent of confrontation between robber and victim, and memory discrepancy with respect to number of persons in the lineup.

■ A lineup does not require exact physical conformity of the participants. *State v. Word,* 527 S.W.2d 708, 710 (Mo. App.1975); *Gaitan v. State,* 464 S.W.2d 33, 35 (Mo.1971). The lineup in this case was preserved for review by the photograph in evidence, and nothing there appears to suggest the identity of Sylvester Jones as the culprit. *State v. Word,* supra.

■ An in-court identification is free of taint when based upon a taint-free independent source. *State v. Ross,* 502 S.W.2d 241 (Mo.1973); *State v. McIntosh,* 492 S.W.2d 843 (Mo.1973); *State v. Mitchell,* 491 S.W.2d 292 (Mo. banc 1973). The in-court identification by Mr. Provance was insulated from taint by an independent source in that he had face-to-face confrontation with his assailant at the time of the robbery. The assailant was not masked, assailant and victim were close together, and there was light in the room. The confrontation covered at least two minutes, and brief periods of time have been held sufficient. See, e. g., fifteen seconds in *United States v. Mooney,* 417 F.2d 936 (8th Cir. 1969), cert. den. 397 U.S. 1029, 90 S.Ct. 1280, 25 L.Ed.2d 541 (1970); ten seconds in *State v. Holland,* 530 S.W.2d 730 (Mo.App.1975); two minutes in *State v. Patterson,* 465 S.W.2d 599 (Mo. 1971).

■ Appellant contends (IV) that Instruction 7, which submitted Count I, whether defendant robbed Richard Kurtz, "was without any supporting evidence."

The information charged in Count I that Sylvester E. Jones "either acting alone or knowingly in concert with another," robbed

Richard Kurtz; and in Count II that Sylvester E. Jones "either acting alone or knowingly in concert with another," robbed William F. Provance, Jr.

Instruction No. 7 reads:

"As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

"First, that on January 2, 1976, in the County of Jackson, State of Missouri, Richard Kurtz was in charge of a miscellaneous amount of postage stamps and a miscellaneous amount of U.S. currency the money and personal property of one Southland Hotel, a corporation, and

"Second, that at that time and place the defendant and another took the property from Richard Kurtz by causing him to fear immediate injury to his person, and

"Third, that the defendant and another took the property with the intent to permanently deprive Richard Kurtz of the property and to convert it or any part of it to the use of the defendant,

"Fourth, that the defendant acted either alone or knowingly and with common purpose together with another in the conduct referred to in the above paragraphs,

then you will find the defendant guilty under Count I of robbery in the first degree * * *."

Instruction No. 8 is identical in submission of Count II except William F. Provance, Jr., was named as the victim.

The court also gave Instruction No. 6 in form MAI–CR 2.10 covering a party's general responsibility for the conduct of others.

Appellant argues that Instruction No. 7 "directed the jury to find the Defendant guilty if they found that he himself robbed Richard Kurtz. This direction to the jury was without any supporting evidence for the reason that the evidence * * * was all to the effect that the Defendant had nothing to do with Kurtz, but that another robbed him."

Instruction No. 7 was in form MAI–CR 7.60 for submission of robbery, first degree, modified by MAI–CR 2.12 to submit the conduct of the accused either acting alone or knowingly and with common purpose with another. The evidence showed that Richard Kurtz and William F. Provance, Jr., were robbed in the same incident by two men acting together. One, defendant Jones, assaulted Mr. Provance, while the companion assaulted Mr. Kurtz, after which both assailants forced their victims to lie face down together. Both robbers left together. Such evidence is contrary to appellant's assertion, and permitted the jury to find that defendant Jones robbed Mr. Kurtz through the acts of his companion as submitted by Instruction 7. *State v. Reynolds,* 521 S.W.2d 486 (Mo.App.1975); *State v. Jones,* 524 S.W.2d 186 (Mo.App.1975); *State v. Young,* 490 S.W.2d 28 (Mo.1973). Cf. *State v. Sneed,* 549 S.W.2d 105 (Mo.App. 1977); *State v. Dayton,* 535 S.W.2d 469 (Mo.App.1976); *State v. Dayton,* 535 S.W.2d 479 (Mo.App.1976).

The following occurred during the State's opening argument:

■ "You have heard all the evidence, you have seen all the exhibits. And now, you must decide the future of this defendant. You must decide whether or not this defendant shall remain in custody or be returned to live with us in society. In doing this, the Court has given you certain instructions that you must follow and these instructions represent the law and you must follow the law in determining whether or not this defendant is guilty. Unlike this defendant, you must follow the law of Missouri.

"MR. SCHWARZ: Objection to the characterization. MR. STIGALL: Unlike this defendant, you must respect the law— MR. SCHWARZ: Objection to counsel's characterization. He's, in effect, saying his opinion of the defendant is guilty.

"THE COURT: Objection's overruled. MR. SCHWARZ: Which is inappropriate.

"MR. STIGALL: The defendant had no such respect for the law when he came into that hotel that night and robbed Witness Kurtz. The defendant had no respect for the law when he took the money from Witness Provance. He had no respect for fair play when he slapped a cripple because he wasn't moving fast enough, and that's the evidence in this case."

Appellant contends (V) that the foregoing was an opinion that defendant was guilty of the charges against him and that it "deprived [him] of the presumption of innocence before the trial ended" and thus deprived him of a fair trial.

The remark in question is not the type of expression criticized in the cases on the subject. See 9A Mo. Digest, Criminal Law, ▉▉▉▉▉▉ And in this case, reference to defendant's lack of obedience or respect for the law is based on evidence adduced in support of the charge as opposed to facts not in evidence. *State v. Rentschler,* 444 S.W.2d 453 (Mo.1969).

Judgment affirmed.

All concur.