**UNITED STATES of America, Appellee,**

v.

**Michael S. BOUFFARD,**
**Defendant, Appellant.**

**No. 89–1712.**

United States Court of Appeals,
First Circuit.

Heard Jan. 9, 1990.

Decided Oct. 31, 1990.

Timothy P. Gurshin, with whom Perkins, Phillips & Waters, P.A., Concord, N.H., were on brief, for defendant, appellant.

Peter Papps, with whom David A. Vicinanzo, Asst. U.S. Attys., Concord, N.H., and Jeffrey R. Howard, U.S. Atty., Concord, N.H., were on brief, for appellee.

Before TORRUELLA, ALDRICH and CYR, Circuit Judges.

CYR, Circuit Judge.

The United States District Court for the District of New Hampshire refused to suppress a short-barreled shotgun which was seized from an automobile being operated by the defendant immediately prior to the seizure. After reserving the right to appeal the adverse suppression ruling, *see* Fed.R.Crim.P. 11(a)(2), and upon the entry of a conditional plea, the defendant was convicted of unlawful possession of an unregistered firearm under 26 U.S.C. §§ 5845(a) and 5861(d). We vacate the judgment of conviction and remand for further proceedings on the motion to suppress.

## I FACTS

On July 6, 1988, Lieutenant Robert Graves of the Bow (New Hampshire) Police Department intercepted a police radio bulletin requesting assistance in the apprehension of defendant Michael Bouffard, last seen driving a 1979 Mercury Cougar. The defendant was described as "armed and dangerous" and in the company of an unidentified female.[1] Lt. Graves knew that the defendant, on an earlier occasion, had been involved in a foot-chase by officers of the Manchester Police Department and that a stolen .45 caliber pistol had been recovered.

Lt. Graves soon received a radio report that Sergeant Paul Stone had located the 1979 Mercury Cougar at the Bow public boat landing and that it was registered to David Bouffard. When Lt. Graves arrived at the boat landing a few minutes later, the defendant, dressed in a bathing suit, already had been arrested, handcuffed, and placed in the back seat of a police cruiser. Sergeant Stone told Lt. Graves that he had found no female subject.

After retrieving the car keys which the defendant had left in the Cougar, Graves opened the trunk lid for the stated purpose of attempting to locate the putative female companion. At first glance all he saw in the trunk were two large green garbage bags, filled with clothing, located in the well of the trunk, and a black coat spread across the back of the trunk. When Graves lifted one of the garbage bags, he immediately saw the shotgun resting on the floor of the trunk. The shotgun was not visible until the bag was moved.

## II BACKGROUND

The defendant was unable to persuade the district court that the warrantless opening of the trunk to locate the putative female companion was pretextual. The district court concluded that the opening of the trunk was reasonable in the circumstances. Unlike the dissent, however, the district court did not undertake to consider whether the act of lifting the garbage bag constituted a "search," reasonable or otherwise, *see Arizona v. Hicks,* 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), presumably because the defendant did not make that argument to the district court. Nevertheless, on appeal the defendant vigorously contends that Lt. Graves' "rummaging" inside the trunk violated defendant's fourth amendment rights, even assuming that it was reasonable to open the trunk. *See Hernandez–Hernandez v. United States,* 904 F.2d 758, 763 (1st Cir. 1990) ("our general rule is not to consider

---

**1.** Evelyn Bouffard, the wife of defendant's brother, David, sought the assistance of the Hooksett Police Department in recovering the vehicle. She told a Hooksett police officer that she had let the defendant use the vehicle the previous afternoon, on the condition that defendant return the car by 5:00 p.m. so that she could drive it home from work. Evelyn knew that there were warrants outstanding for defendant's arrest, and she understood from the defendant that he needed the car so that he could drive his girlfriend to her home before he turned himself in to the police. It was this understanding which prompted Evelyn to advise the police that the defendant might be accompanied by a female. The police officer did not seem much interested in Evelyn's report until she mentioned Michael Bouffard by name. Evelyn did not give the police any indication that the defendant was armed. Indeed, she protested when she heard the police bulletin report that the defendant was "armed and dangerous;" she was told that the announcement was "precautionary." The police bulletin reported the Cougar "stolen." There is no evidence that Evelyn protested the latter characterization.

claims raised for the first time on appeal"); *United States v. Perez–Franco*, 839 F.2d 867, 871 (1st Cir.1988) (per curiam) (same). Finally, as a consequence of the government's concession that the defendant possessed "standing" to challenge the discovery of the firearm,[2] the district court never determined whether the defendant had demonstrated a legitimate expectation of privacy in the trunk of the automobile. *See, e.g., Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).[3]

## III DISCUSSION

More than a decade ago the Supreme Court laid to rest the persistent notion that fourth amendment "standing" and "reasonable expectation of privacy" are interchangeable concepts. *See Rawlings v. Kentucky*, 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980); *Rakas*, 439 U.S. at 140–48, 99 S.Ct. at 428–33. *Rawlings* restructured the substantive analysis in search and seizure cases by dispensing with "standing" as a discrete analytic element apart from the merits.

Prior to *Rakas*, petitioner might have been given 'standing' in such a case to challenge a 'search' that netted those drugs [owned by defendant, but in plain view] but probably would have lost his claim on the merits. After *Rakas, the two inquiries merge into one: whether governmental officials violated any legitimate expectation of privacy held by petitioner.*

*Rawlings* 448 U.S. at 106, 100 S.Ct. at 2562 (emphasis added).[4]

■ Notwithstanding a certain reluctance in legal circles to relinquish familiar rubrics with convenient labels, "standing" no longer can connote a legitimate expectation of privacy in the evidence seized or the premises searched.[5] Rather, after *Rakas* and *Rawlings* it is incumbent upon the defendant to establish not only unlawful police conduct, but that the unlawful conduct intruded upon some legitimate expectation of privacy on the part of the defendant who challenges it. *Rawlings*, 448 U.S. at 104, 100 S.Ct. at 2561; *Rakas*, 439 U.S. at 131 n. 1, 99 S.Ct. at 424 n. 1 ("The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the

---

**2.** Defense counsel represented in the motion to suppress that "counsel for the Government ... has indicated that the Government concedes that the defendant has standing to challenge the search which led to the discovery of the subject firearm. Counsel for the Government, however, does not concur in the present motion in all other respects." At oral argument government counsel again conceded "standing."

**3.** The dissent considers it "most important ... that the litigants *only* appeal the issue of whether the police exceeded the *scope* of the permissible warrantless search of the automobile." Post at 678–79 (emphasis in original). This observation overlooks the fact that the permissible *scope* of every warrantless search is defined, in the first instance, in our dissenting colleague's well-turned phrase, by "the amendment's prohibition against unreasonable searches and seizures [which] extends only to protect those places and interests in which the accused can be characterized as having a legitimate expectation of privacy". *United States v. Cruz Jimenez*, 894 F.2d 1, 5 (1st Cir.1990) (Torruella, J.) (citing *Rakas*, 439 U.S. at 140–50, 99 S.Ct. at 428–34). Accordingly, the *merits* issue whether the defendant possessed a legitimate expectation of privacy in the area searched is inescapable in any search and seizure case. Thus, none of the concerns discussed in the dissent arise, or bear

discussion, much less decision, unless and until the defendant establishes a legitimate privacy expectation. *See, e.g., United States v. Soule*, 908 F.2d 1032, 1034–36 (1st Cir.1990); *Cruz Jimenez*, 894 F.2d at 5.

**4.** The Court in *Rawlings* refused to permit suppression of illegal drugs which the owner had placed in a friend's purse, because the owner of the drugs had not demonstrated a legitimate expectation of privacy in the purse. *Rawlings*, 448 U.S. at 106, 100 S.Ct. at 2562. On the same day, the Court decided *United States v. Salvucci*, 448 U.S. 83, 95, 100 S.Ct. 2547, 2554, 65 L.Ed.2d 619 (1980), *rev'g* 599 F.2d 1094 (1st Cir.1979), which eliminated the so-called "automatic standing" rule in *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), whereby a defendant charged with a crime of possession was deemed to have had "automatic standing" to challenge any search which disclosed the evidence of the criminal possession, without regard to whether the defendant had a legitimate expectation of privacy in the premises searched.

**5.** As the present case well demonstrates, after *Rakas* the familiar nomenclature of "standing" retains no utility in fourth amendment jurisprudence, except for facilitating reference and promoting confusion.

challenged search or seizure."); *United States v. Soule*, 908 F.2d at 1034. *See also Cruz Jimenez*, 894 F.2d at 5 ("Demonstration of [a legitimate expectation of privacy] is a threshold standing requirement, and analysis cannot proceed further without its establishment.") (footnote omitted).[6]

More to the present point, *Rakas* discarded the formula for "standing" previously approved in *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), which turned on whether the defendant was "legitimately on [the] premises." *Id.* at 267, 80 S.Ct. at 734. The Court concluded in *Rakas* that the *Jones* formula did "not answer the question whether the search violated a defendant's 'reasonable expectation of freedom from governmental intrusion.'" *Rakas*, 439 U.S. at 147, n. 14, 99 S.Ct. at 432, n. 14 (quoting *Mancusi v. DeForte*, 392 U.S. 364, 368, 88 S.Ct. 2120, 2124, 20 L.Ed.2d 1154 (1968)).

The Supreme Court reformulated in substantive terms the appropriate fourth amendment inquiry.

[T]he question is whether the challenged search and seizure violated the Fourth Amendment rights of a criminal defendant who seeks to exclude the evidence obtained during it. That inquiry in turn requires a determination of whether the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect. We are under no illusion that by dispensing with the rubric of standing used in *Jones* we have rendered any simpler the determination of whether the proponent of a motion to suppress is entitled to contest the legality of a search and seizure. But by frankly recognizing that this aspect of the analysis belongs more properly under the heading of substantive Fourth Amendment doctrine than under the heading of standing, we think the decision of this issue will rest on sounder logical footing.

*Rakas*, 439 U.S. at 140, 99 S.Ct. at 429. The Court concluded that there was no need to determine whether the investigatory stop and search of the vehicle in *Rakas* violated any constitutional right of its owner-driver, who was not a party to the proceeding, because mere "legitimate presence" on the part of the defendant passengers, although relevant, was insufficient to demonstrate that *their* fourth amendment rights had been violated. *Id.* at 148, 150, 99 S.Ct. at 432, 434.

The present case poses similar problems. There is no assertion and no evidence that the defendant had a proprietary interest in the vehicle, *see id.* at 148, 99 S.Ct. at 432–33, or the shotgun, *id.*, or any right to exclude others from the vehicle, *id.* at 143–44 n. 12, 99 S.Ct. at 430 n. 12, particularly Evelyn Bouffard, at whose instance the police recovered the vehicle and arrested the defendant after the expiration of the bailment period. As a consequence, the defendant and the vehicle were in police custody at the time the shotgun was discovered and seized. *See id.* at 148, 99 S.Ct. at 432–33 ("legitimate presence" relevant, but not controlling). *Cf. Minnesota v. Olson*, —— U.S. ——, 110 S.Ct. 1684, 1689, 109 L.Ed.2d 85 (1990) ("we think that society recognizes that [an overnight] houseguest has a legitimate expectation of privacy in his host's home").

■ As concerns the nature of any possessory right or interest the defendant retained in the vehicle at the time of the seizure of the shotgun, the present record would support findings that (1) the defendant retained possession of the vehicle beyond the bailment term, (2) the bailor re-

---

**6.** The defendants in *Rakas* were passengers in a getaway car being driven by its owner at the time it was stopped by the police. A search of the passenger compartment disclosed a sawed-off rifle and a box of shells. The government challenged defendants' "standing," but, like Bouffard, the *Rakas* defendants neither asserted nor evidenced any proprietary interest in the car or the gun.

*Rakas* reaffirmed the rule in *Alderman v. United States*, 394 U.S. 165, 174, 89 S.Ct. 961, 966, 22 L.Ed.2d 176 (1969): "Fourth Amendment rights are personal rights which ... may not be vicariously asserted." *Rakas*, 439 U.S. at 133–34, 99 S.Ct. at 424–25. Further, *Rakas* rejected the so-called "target" theory, which would have accorded "standing" to any person against whom a search was directed. *Id.* at 132–38, 99 S.Ct. at 424–27.

quested and received police assistance in recovering the vehicle, (3) the Hooksett police radio bulletin reported the vehicle "stolen," (4) Lt. Graves responded to the radio request, (5) the defendant and the vehicle were in police custody before Lt. Graves arrived at the scene, and (6) Lt. Graves thereafter seized the shotgun from the trunk of the vehicle. In sum, as matters stand there is a clear insufficiency of evidence to demonstrate that the defendant possessed a legitimate expectation of privacy in the vehicle at the time the shotgun was discovered and seized.[7]

In the unusual posture of the present case, however, the more immediate consideration is whether remand is appropriate to enable further factfinding or the presentation of further evidence. *Compare Combs v. United States*, 408 U.S. 224, 227–28, 92 S.Ct. 2284, 2286, 33 L.Ed.2d 308 (1972) (per curiam) (ordering remand where prosecutor did not challenge defendant's "standing") *with Rakas*, 439 U.S. at 130–131 n. 1, 99 S.Ct. at 424 n. 1 (refusing to remand where prosecutor challenged "standing" at suppression hearing). Since the government conceded "standing," before the district court and on appeal, the present case is more akin to *Combs* than *Rakas*. *See Combs*, 408 U.S. at 227, 92 S.Ct. at 2286 ("Clearly, however, petitioner's failure to make any such assertion [of a possessory or proprietary claim to the searched premises] . . . may well be explained by the related failure of the Government to make any challenge . . . to petitioner's standing to raise his Fourth Amendment claim."). *Compare Soule*, 908 F.2d at 1036 n. 7.

■ The government's crude concession resulted in the absence of any district court determination, and an insufficiently developed record, as to whether defendant possessed a "legitimate expectation of privacy:" (1) a subjective expectation of privacy in the area searched, *Cruz Jimenez*, 894 F.2d at 5; (2) which society is prepared to recognize as reasonable, *California v. Greenwood*, 486 U.S. 35, 39, 108 S.Ct. 1625, 1628, 100 L.Ed.2d 30 (1988); *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring). Considerations of fundamental fairness warrant remand in order to afford the defendant an opportunity to attempt to establish the requisite expectation of privacy. *See, e.g., Combs*, 408 U.S. at 227, 92 S.Ct. at 2286. *Compare Soule*, 908 F.2d at 1036 n. 7. Moreover, quite apart from considerations of fundamental fairness, remand will permit the district court to consider, in the first instance and on an adequate record, whether the defendant can demonstrate a legitimate expectation of privacy. Finally, the fact-dependent issues underpinning the defendant's fourth amendment claim are not susceptible of reliable determination on the present record. *See Combs*, 408 U.S. at 227, 92 S.Ct. at 2286 ("In any event, the record now before us is virtually barren of the facts necessary to determine whether petitioner had an interest in connection with the searched premises that gave rise to 'a reasonable expectation [on his part] of freedom from governmental intrusion' upon those premises.") (quoting *Mancusi v. DeForte*, 392 U.S. at 368, 88 S.Ct. at 520).

Without limitation upon the district court's discretion to permit broader ranging proceedings, on remand the parties should be permitted to explore whether the defendant possessed a subjective expectation of privacy in the firearm, or in the trunk of the 1979 Mercury Cougar,[8] *see,*

---

7. Our review is not constrained to the grounds relied on in the district court. We may uphold the denial of the suppression motion if supported by any reasonable view of the evidence. *Soule*, 908 F.2d at 1036 n. 7; *United States v. Veillette*, 778 F.2d 899, 902 (1st Cir.1985), *cert. denied*, 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986). *See also Polyplastics, Inc. v. Transconex, Inc.*, 827 F.2d 859, 860–61 (1st Cir.1987); ("We are free, on appeal, to affirm a judgment on any independently sufficient ground.") *Norris v. Lumbermen's Mut. Cas. Co.*, 881 F.2d 1144,

1151–52 (1st Cir.1989) (quoting *Doe v. Anrig*, 728 F.2d 30, 32 (1st Cir.1984) (quoting *Brown v. St. Louis Police Dept.*, 691 F.2d 393, 396 (8th Cir.1982), *cert. denied*, 461 U.S. 908, 103 S.Ct. 1882, 76 L.Ed.2d 812 (1983); collecting cases).

8. *Cf. Simmons v. United States*, 390 U.S. 377, 394, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247 (1968) (testimony given by accused at suppression hearing cannot be admitted, over his objection, as evidence of guilt at trial); *Salvucci*, 448 U.S. at 88, 100 S.Ct. at 2551 (same).

*e.g., Cruz Jimenez*, 894 F.2d at 5, whether any such subjective expectation of privacy is one which society is prepared to recognize as reasonable in the circumstances of the present case, *see, e.g., Minnesota v. Olson*, 110 S.Ct. at 1689; *California v. Greenwood*, 486 U.S. at 39–40, 108 S.Ct. at 1628–29; *Hudson v. Palmer*, 468 U.S. 517, 526, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Rawlings*, 448 U.S. at 106, 100 S.Ct. at 2562; *Rakas*, 439 U.S. at 148–50, 99 S.Ct. at 432–33; if so, whether the actions of Lt. Graves, after lifting the trunk lid, constituted a "search," *see, e.g., Arizona v. Hicks*, 480 U.S. at 324–25, 107 S.Ct. at 1152–53; and, if so, whether the search was rendered "reasonable" under the fourth amendment by virtue of the consent of Evelyn Bouffard, *see Illinois v. Rodriguez*, —— U.S. ——, 110 S.Ct. 2793, 2796, 111 L.Ed.2d 148 (1990).

We vacate the judgment of conviction and remand for further proceedings consistent with this opinion.

## VACATED AND REMANDED.

**BAILEY ALDRICH**, Senior Circuit Judge, concurring.

I accept, albeit reluctantly, Judge Cyr's opinion and consequences. If the opinion had ended with footnote 7, and a resulting affirmance, I would have agreed more wholeheartedly. However, my brother Cyr does have a point that the government's repeated stipulation of the defendant's "standing" muddied the waters. From this he concludes that, in all fairness, though defendant failed, he should now have a chance to prove a case. Given the record facts, the sister-in-law's call to the police and the registration, I have great difficulty in seeing how defendant can prove a right of privacy, or, perhaps more to the point, within the recent case of *Illinois v. Rodriguez*, —— U.S. ——, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990), police unreasonableness. The legal distinction between embezzlement, a wrongful claim to possession, if he did claim it, and the police word "sto-

len," seems inconsequential. However, I will not seriously quarrel with my brother's feelings that the defendant should have another try, my final decision to await the event.

**TORRUELLA**, Circuit Judge (dissenting).

Bouffard's fate is decided on issues not raised on appeal by the parties, as well as by a side-stepping of concessions made by the government before both the district court and our court. I believe this to be inappropriate and unwarranted particularly because it leads to results that run contrary to Supreme Court precedent. *Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987).

Below, the government *conceded* defendant's standing to challenge the search. According to the majority, a problem is presented by the concession in that "the record consequently contains insufficient evidence that the defendant had a legitimate expectation of privacy." *Supra* at 677. However, in my opinion, the government's acknowledgment was made because Bouffard's reasonable expectation of privacy was obvious. Firstly, regardless of whether the permission to use the car had expired,[1] Bouffard's possession gave him a reasonable expectation of privacy. And this expectation applied to the trunk as well. Secondly, the government conceded that the shotgun was in Bouffard's possession and control. Furthermore, it is clear from the arguments developed below, and in the briefs and oral argument before this court, that the parties assumed the obvious—that Bouffard had legitimate possession and control over the car and the gun, thus creating a reasonable expectation of privacy.

But most important is the fact that the litigants *only* appeal the issue of whether the police exceeded the *scope* of the permissible warrantless search of the automobile. This issue is properly before us on appeal because, contrary to the majority's charac-

---

**1.** It should be noted that the owner of the car neither reported her car to the police as stolen nor at any time filed charges to such effect.

terization of the situation, defendant's motion to suppress based on the unreasonableness of the search presumably referred not merely to the act of opening the trunk but also to the act of lifting the garbage bag. The issues as stated by the parties in their briefs are:

As stated by the appellee:

Whether the district court's factual finding—that fear for the safety of the missing woman justified the warrantless search of the trunk of the stolen car—is correct and not "clear error."

As stated by the appellant:

I.  Whether the warrantless search of the trunk of an automobile which had been driven by the defendant was legally justifiable by a combination of exigent circumstances and the "community caretaking function" of the police?

II.  Assuming arguendo that the warrantless search of the trunk of an automobile which had been driven by the defendant was legally justifiable by a combination of exigent circumstances and the "community caretaking function" of the police, whether the search as conducted exceeded the scope of a search so justified on the particular facts of this case?

The majority, however, *motu propio* expands the theater of operations. This is not a proper role for our court to assume.

If this appeal is limited to the issues actually litigated before the district court, and those briefed and argued by the parties on appeal, the following is apparent: The police officer was correct in opening the trunk pursuant to Bouffard's arrest because the radio dispatch gave him reason to believe that a female might be in peril. *Mincey v. Arizona*, 437 U.S. 385, 392, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290 (1978); *United States v. Irizarry*, 673 F.2d 554, 557 (1st Cir.1982). It is clear that a warrantless search of an automobile may be conducted in every part of the vehicle where there is probable cause to believe that the object of the search may be found. *United States v. Ross*, 456 U.S. 798, 820–24, 102 S.Ct. 2157, 2170–72, 72 L.Ed.2d 572

(1982). But all that was necessary here, was to open the trunk and look inside for the woman. Upon seeing that no one was inside the trunk, the search should have ceased. Any further search required the issuance of a warrant upon probable cause, because a search must be strictly circumscribed by the exigencies that justified its initiation. The "[f]ourth Amendment does not countenance warrantless 'exploratory rummaging'," and search activity must be related to the purpose of the officer's presence. *United States v. Miller*, 589 F.2d 1117, 1125 (1st Cir.1978). A bag of clothing sitting on the flat floor of a large automobile trunk, in broad daylight, could not possibly conceal the length, width or depth of a female human being.

The record of the police officer's examination establishes without doubt that his search of the automobile's trunk transgressed constitutional limits. When asked if he expected to find a female under the bag, Graves responded that "it could have been a female child." But he admitted on further inquiry that he had no information that the reported female was a child. He also admitted that he was not looking for a 21 inch human being, which is the approximate area covered by the bag that he moved. These facts clearly indicate that Graves engaged in prohibited "exploratory rummaging." The moving of the bag was a search separate and apart from the lawful objective of looking for the missing female and it required support by independent probable cause. *Arizona v. Hicks*, 480 U.S. at 324–25, 107 S.Ct. at 1152–53 (moving a stereo turntable "a few inches" to view serial numbers on its bottom, constituted a search separate and apart from the original legal search of the apartment, and required independent probable cause).

There was no support for the actions of the police officer once the trunk was opened and he failed to see any evidence of criminal activity in plain view or any place in the trunk where the object of the search could reasonably have been hidden. Bouffard's motion to suppress the shotgun should have been granted because his Fourth Amendment rights were violated by Graves' exploratory rummaging of the

automobile trunk. Lastly, I am opposed to the majority's disposition of this appeal because by remanding this case to the district court for additional findings, this court is allowing the government to take two bites at an apple it chose not to bite in the first place.

I dissent.