[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1145 
 ON APPLICATION FOR REHEARING
We withdraw our opinion of October 11, 1988, and substitute the following therefor.
On original submission, we remanded this case pursuant to our opinion in Hergott v. State, 554 So.2d 1139 (Ala.Cr.App. 1988), which is a companion case. We remanded Hergott because the record was inadequate to determine the sole issue of whether the warrantless search of Hergott's property and the subsequent seizure of marijuana thereon were constitutional. We have since reviewed the state's application for rehearing in the instant case and have concluded that the resolution of the issue inHergott is not necessary for the disposition of this case.
The record reflects that Sheriff Harvey Walker of Winston County, in response to a tip from an informant, dispatched Investigator Jerry Thorn to the Pebble School Community of Winston County to look for a "large patch" of marijuana that was reportedly growing on property that was owned, or formerly owned, by Elmer Thrasher. Thorn drew a rough map of the area from the tax assessor's records, and then he and Officer James Horsley of the Conservation Department proceeded to the area to look for the marijuana. Unsure of the exact location of the property, the officers drove around the general area, passed two homes, and then stopped at what they later learned to be the home of Richard Hergott. Horsley jumped the fence surrounding the house and knocked on the front door, planning to inquire about the exact location of the Thrasher property. No one responded, and Horsley proceeded to the rear of the house, where he had observed two vehicles parked near a shed or workshop-type building. The door of the shed was open, and Horsley thought that someone might be inside, but he got no response when he called out. He proceeded down a trail road a few yards past the shed to a fence and closed gate, beyond which he could see a barn or greenhouse-type building, to see if anyone was there. As he stood at the gate, he observed some potted marijuana plants on the back side of a garden, which was situated behind the Hergott house and within the fence that surrounded the house and the shed.
Horsley returned to his vehicle, where Thorn was waiting, and after contacting Sheriff Walker, they set up surveillance of the house from across the road. Minutes later, Richard James Hergott drove up to the house, and the officers approached him. Thorn informed Hergott that marijuana had been found in the garden, and then he read him his Miranda rights. Hergott admitted that the marijuana was his, and he was placed under arrest. Sheriff Walker arrived and, after the marijuana from the garden, consisting of approximately 40 chest-high plants, was loaded in a patrol car, he proceeded to transport Hergott to jail.
At some point after Hergott's arrest, appellant, Larry Allen Kaercher, walked up to the officers from the direction of the greenhouse or barn, behind Hergott's property. He told the officers that he owned the property behind the Hergott property and that he had been down in the pasture running horses. The officers later determined that the greenhouse and the property on which it was located belonged to *Page 1146 
appellant and Daniel S. Brodhead. The officers informed appellant that Hergott had been arrested and, after he inquired about how to get Hergott out of jail, appellant drove away in a red Nissan Pathfinder vehicle.
Thorn and Horsley decided to continue to look for the "large patch" of marijuana that the informer had reported was in the area. Horsley planned to walk through the woods between Hergott's house and the old Pebble School, and Thorn was to drive around on the road and pick him up at a designated point beyond the woods. Horsley crossed the fence at the rear of Hergott's property and, when he was approximately 50 yards from the greenhouse or barn, on appellant's and Brodhead's property, he observed, through its lattice-work siding, what he thought was marijuana growing inside. He walked up to within a few feet of the building, and he positively identified the plants inside as marijuana. Horsley summoned Thorn and Sheriff Walker back to the scene and, thereafter, the officers began searching for appellant.
The officers located appellant's residence, some distance from Hergott's house, but found no one at home. As Horsley was leaving appellant's house, he observed truck tracks leading from the house through a kudzu patch. He followed the tracks and found marijuana on the ground and in pots approximately 150 yards from the house. The record indicates that this marijuana found 150 yards from appellant's residence was discovered prior to the seizure of the marijuana in the barn. Appellant's property, near his residence, was again searched the following day, and over 2,900 marijuana plants were found in the woods. Subsequently, appellant's residence was also searched, pursuant to a warrant.
Prior to this final search of appellant's residence and surrounding property, the officers learned that the red Nissan Pathfinder that appellant had been driving earlier was located at the home of Brodhead. When the officers arrived at the Brodheads' home, Becky Brodhead, Brodhead's wife, informed them that the vehicle was in the garage, and she opened it and allowed them to go inside. The vehicle was locked, but the officers could see boxes and bags inside. One bag had a stem protruding from within, and Horsley recognized it as being the stem of a marijuana plant. Becky Brodhead did not have a key, so the officers had the vehicle towed to the sheriff's office, where it was searched the following day, after a warrant was obtained. The boxes and bags contained 29 pounds of marijuana.
Shortly after the three defendants (Hergott, Kaercher, and Brodhead) were arrested and before they were indicted, appellant (Kaercher) and Hergott moved for a preliminary hearing. The motion was granted, and a consolidated hearing was held in the District Court of Winston County for Kaercher and Hergott. At this preliminary hearing, the officers involved in the investigations testified, but the defendants did not testify or present any evidence. Upon conclusion of the hearing, the district court found probable cause to bind Kaercher and Hergott over to the grand jury.
Subsequently, appellant, Brodhead, and Hergott were indicted for trafficking in cannabis. They entered pleas of not guilty and filed motions to suppress the evidence obtained by the state as a result of the searches and seizures, claiming that their Fourth Amendment rights had been violated. Appellant's motion to suppress was general and conclusory and did not address any specific contraband or property. Hergott's motion to suppress was specifically addressed to the marijuana discovered on his property, and he claimed that because it was within his curtilage, its seizure without a warrant violated his constitutional rights, requiring its suppression. Brodhead's motion to suppress, like Kaercher's, was general and conclusory. No hearings were ever held on the motions to suppress.
As a result of plea bargaining, the defendants ultimately withdrew their pleas of not guilty, entered guilty pleas to trafficking in cannabis, and reserved the right to appeal the trial court's ruling denying their motions to suppress. The three defendants were charged separately with having in *Page 1147 
their possession more than 2.2 pounds of cannabis "at or near" their property. In the consolidated guilty-plea proceedings, the trial court, in establishing a factual basis for the pleas, asked Hergott what he had done. Hergott replied, "I was growing marijuana on my property." Hergott also admitted that the marijuana was in excess of 2.2 pounds. To the same question, appellant replied, "I had marijuana growing on property in Winston County." He also admitted that it was in excess of 2.2 pounds. Brodhead stated, "I had marijuana growing on my property in Winston County." He admitted that it was in excess of 2.2 pounds. This admission was qualified by Brodhead's attorney when he stated in effect, to the trial court during the colloquy, that his client was agreeing to "a general possession plea" to "2.2 pounds."
As part of the plea bargain, it was agreed that the three defendants would have the right to appeal the denial of their motions to suppress. The parties stipulated, with the court's approval, that a transcript of the preliminary hearing held for Hergott and appellant would be filed and considered as evidence in support of the motions to suppress; that the trial court would deny the motions; and that the transcript of the preliminary hearing would become the record for purposes of appeal to this court. Brodhead agreed to this procedure even though he had not been a party to the preliminary hearing. Appellant's attorney stated his understanding of this proceeding, as follows:
 "MR. JAFFE [appellant's counsel]: As I understand it in all of the negotiations that all of us have had with Al [district attorney], this will be a plea of guilty in accordance with the Sawyer case.[1] It is in fact a guilty plea; but that the motion to suppress that your honor will overrule today, all of which that motion to suppress will be overruled and the record on appeal will be the preliminary hearing transcript which we will submit today. And that will be the entire record on appeal factually in regards to the motion to suppress which has been filed and that we have also talked about since we did not actually have a motion to suppress; so, therefore, we haven't got real specific as far as all of the motions — I think we have all filed." (Emphasis added.)
Each defendant, in addition to his motion to suppress, adopted the motions of the other defendants, and appellant, in adopting Hergott's motion to dismiss, amended it to include "[a]dditional searches of Kaercher's residence and other places including attached land truck etc. . . ."
We are constrained to say at the outset that we are called upon to review the rulings of the trial court in reference to complicated Fourth Amendment questions by resorting to a record compiled for the purpose of establishing probable cause to hold two of the defendants for grand jury action. The motions to suppress, particularly appellant's, lack specificity. A motion to suppress should be specific with reference to the grounds upon which the movant relies. State v. Johnson, 16 Or. App. 560,519 P.2d 1053 (1974) (cited and quoted with approval in 4 W. LaFave, Search and Seizure § 11.2(a) (2d ed. 1987)). It is apparent that appellant, for whatever reason, carefully avoided identifying what marijuana on what property he claimed needed to be suppressed and, further, avoided stating any specific ground or claim for suppression. He submitted a mere "shotgun" motion having no particularity.[2] Rather than have a suppression hearing, the defendants chose to rely upon the record of a preliminary hearing which did not draw out and define any constitutional issue involved. They obviously chose to divulge as little information as possible and, at the same time, to take advantage of any violation of a Fourth Amendment right which may have occurred to any of them. Thus, the *Page 1148 
trial court did not have, and this court does not have, the benefit of specific legal arguments and claims directed toward the numerous searches and seizures encompassed within this factual situation. Finally, the trial court failed to make findings, making the resolution of the appeal even more difficult.
 I.
Appellant argues that his Fourth Amendment right to be free from unreasonable searches and seizures was violated by the officers' warrantless search of Hergott's property. He contends that he has standing to assert the protections of the Fourth Amendment against the warrantless search of Hergott's property because of the following allegations: Appellant and Hergott were co-defendants; appellant pleaded guilty to growing the marijuana on the Hergott property, as well as that found in all the other locations; appellant, Hergott, and Brodhead were all accused of growing all of the marijuana seized;[3] there was a map found in Hergott's house, showing the relationship of the house, the shed, and the barn, as well as the water and electrical connections between them; and appellant's truck was on Hergott's property, near the marijuana found in the garden. Appellant argues that these asserted facts show a sufficient connection between his property and the Hergott property to allow him to benefit from the protections of the Fourth Amendment and, thereby, challenge the search of the Hergott property and the subsequent seizure of the marijuana found thereon.
Clearly, our inquiry must begin with a determination of whether appellant was so situated, with regard to the search of Hergott's property, that he can even attack the seizure of the marijuana found thereon. If he was not, then it will be unnecessary, in his case, to determine whether the discovery and subsequent seizure of the marijuana on the Hergott property resulted from an unlawful search.
The law is clear that only a defendant who has had hisown Fourth Amendment rights violated by an unlawful search may invoke the exclusionary rule as to the fruits of that search.Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387
(1978). "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." Id.
at 134, 99 S.Ct. at 425. For a search to violate the rights of a specific defendant, that defendant must have a legitimate expectation of privacy in the place searched, and the burden is squarely on the defendant asserting the violation to establish that such an expectation existed. Id. See also United States v.Salvucci, 448 U.S. 83, 87, 100 S.Ct. 2547, 2550, 65 L.Ed.2d 619
(1980).
 "No one circumstance is talismanic to the Rakas inquiry. 'While property ownership is clearly a factor to be considered in determining whether an individual's Fourth Amendment rights have been violated, property rights are neither the beginning nor the end of . . . [the] inquiry.' United States v. Salvucci, 448 U.S. 83, 92, 100 S.Ct. 2547, 2553, 65 L.Ed.2d 619, 628 (1980) (citation omitted). Other factors to be weighed include whether the defendant has a possessory interest in the thing seized or the place searched, whether he has the right to exclude others from that place, whether he has exhibited a subjective expectation that it would remain free from governmental invasion, whether he took normal precautions to maintain his privacy and whether he was legitimately on the premises. See, id.; Rawlings v. Kentucky, 448 U.S. 98, 100 S.Ct. 2556, 2559, 65 L.Ed.2d 633 (1980); Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)."
United States v. Haydel, 649 F.2d 1152, 1155 (5th Cir. 1981), cert. denied, 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 140
(1982).
In the instant case, the record reveals that the marijuana found on Hergott's property was in pots at the rear of the garden behind Hergott's house. From *Page 1149 
all indications, the marijuana was not hidden in any manner, but was clearly visible from the trail road on which Horsley was standing. Other than the facts that there was a fence, which from all indications was not unlike those normally seen in rural areas, around Hergott's yard and that the marijuana was behind the house, the record reveals no actual steps taken to conceal it. The record bears no indication that appellant held any interest in the Hergott property; that he had authority to be on the Hergott property, other than to pass through it going to his own property located to the rear; that he had any authority to exclude others from the Hergott property; that he exhibited a subjective expectation that Hergott's property would remain free from governmental invasion; or that he took any precautionary steps to maintain his alleged privacy.
Furthermore, the evidence supports no reasonable conclusion that appellant and Hergott were engaged in a joint enterprise. Appellant cites United States v. Broadhurst, 805 F.2d 849 (9th Cir. 1986), apparently to support his argument that appellant and Hergott were engaged in a joint enterprise. Broadhurst
holds that one may have a legally sufficient interest in a place other than his own property so as to extend Fourth Amendment protection from unreasonable searches and seizures in that place, and that a formalized arrangement among defendants indicating joint control and supervision of the place searched is sufficient to support a legitimate expectation of privacy.Id. at 851-52. We have no quarrel with Broadhurst, but point out that the record here falls far short of establishing a formalized arrangement between appellant and Hergott indicating joint control and supervision of the Hergott property. In fact, Hergott made a statement to the officers wherein he admitted that the marijuana on his property was his and was for personal use only, and wherein he denied any interest in the marijuana found on the adjacent property. The only portion of the record which connects appellant with the marijuana in Hergott's garden is his blanket guilty plea, in which he stated, "I had marijuana growing on property in Winston County," and in which he answered affirmatively to whether it was in excess of 2.2 pounds.
The record reveals the following:
 "THE COURT: Then Mr. Kaercher to the charge of trafficking in cannabis how do you plead?
"MR. KAERCHER: Guilty, Your Honor.
"THE COURT: Tell me briefly what you did?
 "MR. KAERCHER: I had marijuana growing on property in Winston County.
"THE COURT: In excess of 2.2 pounds?
"MR. KAERCHER Yes, Your Honor.
". . . .
 "MR. TIDWELL [district attorney]: I hate to keep bringing this up because [there] is a good possibility that all or some of these defendants intend to appeal. I think it is important that we determine what they are pleading guilty to possessing. I think we are going to have to do that. In other words, anything that is alleged or evidence . . . that is alleged in the — I don't have any problem with the general plea as long as it is understood that the 2.2 pounds or more that they are admitting possessing could be any 2.2 pounds that fits anywhere that the appellate courts determines is appropriate.
 "MR. JAFFE [appellant's attorney]: For Mr. Kaercher, I don't have any problem with that."
Appellant argues that his guilty plea established his interest in the marijuana found on Hergott's property, as well as that found in all the other locations and that, therefore, he has standing to attack the seizure of all the marijuana. While we agree that the instant record supports appellant's contention that his guilty plea encompassed all the marijuana found, we do not agree that his interest in the marijuana found on Hergott's property, standing alone, bestows upon him the protection of the Fourth Amendment, with regard to Hergott's property. Ownership or a possessory interest in property seized, while relevant in determining whether a defendant's Fourth Amendment rights have been *Page 1150 
violated, is not sufficient alone to warrant a finding that the defendant had a reasonable expectation of privacy in the place where the property was discovered. Rawlings v. Kentucky,448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); Ramires v.State, 492 So.2d 615 (Ala.Cr.App. 1985).
We have reviewed the record and considered appellant's arguments, and we hold that the record indicates that appellant did not have a legitimate and reasonable expectation of privacy in the Hergott property. Therefore, even assuming, arguendo, that there was an unlawful search of Hergott's property, it did not violate any of appellant's Fourth Amendment rights and, therefore, he is entitled to an exclusion of the fruits of that search.
We are not foreclosed from making such finding and, consequently, upholding the trial court's denial of appellant's motion to suppress. If the trial court makes findings of fact, which is the better practice, the appellate court is required to accept them unless they are clearly erroneous. United Statesv. Gunn, 428 F.2d 1057 (5th Cir. 1970); Simmons v. State,428 So.2d 218 (Ala.Cr.App. 1983). However, if findings are not made, as in the case here, the appellate court will uphold the ruling of the trial court if there is any reasonable view of the evidence in the record to support the ruling. United States v.Montos, 421 F.2d 215 (5th Cir. 1970), cert. denied,397 U.S. 1022, 90 S.Ct. 1262, 25 L.Ed.2d 532 (1970); People v. Massiah,47 A.D.2d 931, 367 N.Y.S.2d 73 (1975); Green v. Commonwealth,223 Va. 706, 292 S.E.2d 605 (1982); 4 W. LaFave, supra, at § 11.2(e); 1 W. Ringel, Searches Seizures, Arrests andConfessions § 20.6 (1988). We recognize that appellate courts often remand cases for findings of fact when they cannot determine from the record the basis of the trial court's decision. See, e.g., United States v. Greely, 425 F.2d 592
(D.C. Cir. 1970); People v. Burke, 60 A.D.2d 959, 401 N.Y.S.2d 887
(1978). However, here, even though we have been critical of the manner in which this issue has been presented, we find the record sufficient for us to properly review the ruling of the trial court. We note that, in the instant case, there is no conflict in the evidence. This case is not one of those cases where a defendant failed, or was denied the opportunity, to present evidence at the trial level on important issues. See, e.g., Combs v. United States, 408 U.S. 224, 92 S.Ct. 2284,33 L.Ed.2d 308 (1972); United States v. Hansen, 652 F.2d 1374
(10th Cir. 1981). Here, appellant raised the issue of standing below by adopting Hergott's motion and essentially stepping into his shoes. He also chose the record upon which he would rely on appeal.
From our holdings that appellant had no reasonable expectation of privacy in Hergott's property and that, consequently, the marijuana seized from Hergott's property could not be suppressed in regard to appellant, it follows that appellant's guilty plea should stand. Appellant pleaded guilty to the possession of all the marijuana, including that on Hergott's property. A reasonable inference can be drawn from the guilty plea colloquy that he pleaded guilty to possession of 2.2 pounds on Hergott's property. Appellant, in essence, confirms this is his brief, as follows: "Appellant pled guilty to possession of marijuana that existed on the Hergott property, the adjoining property owned by appellant and Brodhead and the marijuana in the red Nissan truck." This marijuana alone is sufficient to support Kaercher's guilty plea. When a defendant enters a guilty plea and it is accepted, that constitutes an admission of whatever is sufficiently charged in the indictment. Dillard v. State, 462 So.2d 1018
(Ala.Cr.App. 1984); Morrow v. State, 426 So.2d 481
(Ala.Cr.App. 1982).
 II.
Appellant further argues that the search of his greenhouse and the subsequent seizure of the marijuana found therein were the direct results of the illegal search of the Hergott property and that, therefore, that marijuana should have been excluded as "fruit of the poisonous tree." Appellant asserts this same argument regarding the marijuana discovered subsequently at his *Page 1151 
residence and in his vehicle. In addition, he contends that the greenhouse was within the curtilage of Hergott's home and, therefore, that a warrant was necessary before it could be searched. Appellant also contends that, even if the greenhouse was not within the curtilage, it was protected from a warrantless search because he had manifested an expectation of privacy therein. Finally, appellant argues that constitutional violations occurred as a result of the searches of property surrounding his residence and his vehicle, in the absence of probable cause and exigent circumstances.
Initially, we note that appellant's "poisonous tree" argument cannot succeed, for "a defendant, in any event, can prevail on a 'fruit of the poisonous tree' claim only if he has standing regarding the violation which constitutes the poisonous tree." 4 W. LaFave, supra, at § 11.4, p. 371. As we have found in Part I, appellant clearly did not. Appellant's curtilage argument is misplaced because his greenhouse cannot be said to be in the curtilage of Hergott's residence, in which appellant neither held an interest nor even had a legitimate expectation of privacy. As for his argument that he manifested an expectation of privacy in the barn, we find that the officer's observation of the marijuana in the barn or greenhouse was legal, for it falls within the "open fields" doctrine. See Maddox v. State,502 So.2d 779 (Ala.Cr.App. 1985), aff'd in part and remanded by,502 So.2d 786 (Ala. 1986), on remand, 502 So.2d 790
(Ala.Cr.App. 1986), cert. denied, 502 So.2d 794 (Ala. 1987), cert. denied, 481 U.S. 1051, 107 S.Ct. 2185, 95 L.Ed.2d 841
(1987). In regard to the seizure of marijuana from the barn, the record is very sketchy. In fact, there is absolutely no evidence from which to determine whether this seizure was pursuant to a warrant or was warrantless. It was appellant's burden to show initially, at the hearing on the motion to suppress, that the seizure was not pursuant to a warrant. Statev. Franklin, 353 So.2d 1315 (La. 1977); W. Ringel, supra, at § 20.4, p. 20-21. The record before us shows that this requirement was not met, and, thus, the burden did not shift to the prosecution to show that the warrantless seizure fell within an exception to the warrant requirement. Finally, in regard to the searches of appellant's residence and his vehicle, we find that the search of the property surrounding his residence and the subsequent seizure of the marijuana therein were properly made pursuant to the "open fields" doctrine and that the search and seizure of appellant's automobile was pursuant to the "consent" and "automobile" exceptions to the warrant requirements.
However, we find it unnecessary to conduct a detailed analysis of each of those separate searches and determine the admissibility of any marijuana seized thereafter. Under the facts of this case, it does not matter whether any of the marijuana seized subsequently should have been suppressed. As we held in Part I, the marijuana found in Hergott's garden, possession of which appellant pleaded guilty to, was sufficient alone to support his conviction.
 III.
Finally, appellant argues that the evidence was insufficient to support his conviction; however, the right to appeal from this conviction was specifically preserved only as to the motion to suppress and, therefore, this argument is not cognizable within this review. Moreover, a guilty plea obviates all necessity of proof by the state as to each and every element of the offense. Wooten v. State, 455 So.2d 991
(Ala.Cr.App. 1984).
For the foregoing reasons, we find that the trial court did not err in denying appellant's motion to suppress and, therefore, its judgment in this cause is due to be, and it is hereby, affirmed.
APPLICATION FOR REHEARING AND RULE 39(k), A.R.App.P., MOTION GRANTED; ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
All Judges concur.
[1] Ex parte Sawyer, 456 So.2d 112 (Ala. 1983), which authorized the entry of a guilty plea based on an agreement that defendant could challenge the denial of his suppression motion on appeal.
[2] We note, in regard to Part I, that appellant failed to allege, in his motion, how he was the victim of an invasion of privacy by the officers' search of Hergott's property.
[3] This allegation is contrary to the averments in the indictments. *Page 1152