McMillan, judge.
The appellant, Charles Edwin Snider, appeals from his guilty plea convictions on four counts of receiving stolen property in the first degree, in violation of § 13A-8-7, Ala.Code 1975. He was sentenced to life imprisonment.
I.
The appellant argues that the trial court erred in denying his motion to suppress evidence seized as the result of what he alleges was an illegal search (i.e., flyover) by law enforcement officers using a helicopter. Additionally, he argues that the State failed to prove that the evidence seized as a result of the search was located inside of the curtilage of his home.
The evidence presented by the State at the hearing on the motion to suppress tended to show the following: On January 22, 1997, Billy McClendon told Marshall County Investigator Steve Guthrie that he and the appellant had cut up and buried some stolen tractor-trailers on the appellant’s property. McClendon had provided Investigator Guthrie with a map showing the exact location of the buried tractor-trailers. On the following day, Investigator Guthrie, using a helicopter, flew over the appellant’s property and saw what appeared to be “mounds of dirt” in the area described by McClendon. Investigator Guthrie testified that the mounds of dirt were located “more than a football field”' away from the appellant’s residence and behind some chicken houses. He testified that the purpose of the flight was to “verify the statements that had already been given by Mr. McClendon.” The next day, January 24, 1997, Investigator Guthrie obtained a search warrant for the property.
The record reveals that the trial court stated that it was “the opinion of the court [that] the officers had enough [information] the first day after talking to Mr. McClendon to get a search warrant.” “If the trial court makes findings of fact [in denying a motion to suppress], which is the better practice, the appellate court is required to accept them unless they are clearly erroneous.” Kaercher v. State, 554 So.2d 1143, 1150 (Ala.Cr.App.1989). Moreover, the information obtained by Investigator Guthrie as a result of the flyover was merely cumulative of the information he had already obtained. See Maddox v. State, 502 So.2d 779 (Ala.Cr.App.1985). In Maddox, this Court, quoting United States v. Epstein, 240 F.Supp. 80, 83 (S.D.N.Y.1965), stated:
“ ‘This is not to say that law enforcement officials may with impunity include impermissible matter in applications for search warrants in the hope that a Commissioner might thereby be persuaded to find probable cause where otherwise none exists or the issue is in doubt.... But in a case like the present one, where the challenged matter is merely cumula *270 tive, no such danger is run and the warrant may be upheld.’ ”
502 So.2d at 785.
In response to the appellant’s argument that the State failed to prove that the evidence seized was located outside the curtilage to his home, the trial court ruled that the stolen property was in an “open field” and, therefore, a search warrant was not required. Under the facts of this case, however, it' is irrelevant whether the evidence was located in an open field or was within the curtilage of the appellant’s residence: law enforcement officers had a valid search warrant. See Bush v. State, 717 So.2d 438 (Ala.Cr.App.1998) (if a trial court’s ruling is correct for any reason, it will not be reversed because the court assigned a wrong reason therefor).
II.
The appellant argues that the trial court erred in denying his motion to dismiss based upon a “Kastigar ”[1] immunity letter provided him by the United States Attorney for the Northern District of Alabama. Specifically, he argues that his alleged “transactional immunity”[2] from federal prosecution prevented the State from prosecuting him on seven additional counts of receiving stolen property. In support of his argument, he claims that the additional charges were a direct result of testimony he provided after he was assured by federal authorities that he would not be prosecuted based on the information disclosed by the testimony.
The record contains a letter executed by the appellant, by the appellant’s attorney, and an Assistant United States Attorney. The letter refers to a meeting instigated by the appellant and his attorney for the purpose of preliminary plea discussions between federal prosecutors, the appellant’s counsel, and the appellant. It acknowledged that no statement made by the appellant during the meeting would be used against him in any criminal case, other than for impeachment purposes. It also acknowledged that the United States could make derivative use of, and could pursue, any investigative leads suggested by any statements made directly by the appellant or his counsel or by any other information provided by the appellant or his counsel. The letter also contained a stipulation, which states, “[t]his provision is necessary in order to eliminate the necessity for a Kastigar hearing at which the United States would have to prove that the evidence it would introduce at a trial or other proceeding is not tainted by any statements provided by you or your client or other information provided by you or your client during the ‘off the record’ discussions or any other events which occur at the meeting.” The last paragraph of the letter states: “[Finally, it is understood that the United States has made no representations or promises in regard to any proposed charges relating to your client’s illegal activity other than to inform you of potential exposure under federal law.” Although the record indicates that investigators from the Alabama Bureau of Investigation and the Marshall County Sheriffs Department were present at the meeting, the letter does not contain the signature of any representative of the State of Alabama.
It appears that the appellant’s arguments are bare allegations for which there is no evidence contained in the record. Although the letter indicates that the appellant would be granted “compelled immunity” to obtain truthful testimony fol *271 lowing any jury determination of guilt or innocence, he was not offered any other form of immunity in exchange for his testimony. The letter stated that his statements would not be used as substantive evidence against him, but that they could be used for impeachment. Moreover, the letter, on its face, indicates that charges would be brought against the appellant, and, thus, that he would not be immune from either federal or state prosecution.
The appellant is claiming transactional immunity, as opposed to use and derivative use immunity like that granted in Kasti-gar, supra. Moreover, the Court in Kasti-gair noted that a grant of transactional immunity was not necessary to compel testimony, as such immunity “affords the witness considerably broader protection than does the Fifth Amendment privilege” against self-incrimination. 406 U.S. at 453, 92 S.Ct. 1653. Moreover, any agreement indicated by the letter in the present case was between federal prosecutors and the appellant; the State was never a party to any agreement. Furthermore, the record indicates that the State did not intend to use the evidence obtained from this meeting at trial, and the appellant has failed to present any evidence that the additional seven charges against him resulted from his statements to the federal prosecutors.
The record indicates that, after conducting a hearing on the motion to dismiss, the trial court found that “[the letter] does not say [the appellant] is going to be given immunity against prosecution, but only that none of his statements will be used.” Based upon the record before us, this Court cannot say that the trial court’s finding is clearly erroneous. See Kaercher v. State, supra.
III.
The appellant argues that the trial court erred in denying his motion to set aside his guilty plea, his motion for new trial, and his motion for a judgment of acquittal. Specifically, he contends that there was improper ex parte communication between the State and the trial court regarding its second ruling denying the motion to suppress. The trial court had initially granted the motion to suppress based upon the appellant’s argument that the evidence that formed the basis of four of the seven charges against him was obtained as the result of an illegal search and seizure. However, the record indicates that the trial court subsequently reversed its ruling after the State presented caselaw in support of its argument. The case the State brought to the Court’s attention was discussed in the hearing on the motion to dismiss. This was the only ex parte communication between the State and trial court reflected in the record; there was no resulting impropriety. Additionally, the appellant argues that his motions should have been granted based upon the State’s conduct in pursuing charges against him after he was granted immunity. This argument was addressed in Part II of this opinion.
After carefully reviewing the record and the briefs on appeal, we hold that the State presented ample evidence which, if believed by the jury, would sustain the verdicts of guilt. Because the aforementioned grounds for a new trial have been considered by this Court and found to be without merit, the appellant’s argument must fail.
The judgment of the trial court is affirmed.
AFFIRMED.
LONG, P.J., and COBB, BASCHAB, and FRY, JJ., concur.

. The letter in Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), allowed use and derivative use immunity for compelled testimony under certain circumstances.

. "Transactional immunity” is immunity from prosecution for any offenses to which the compelled testimony relates. "Use and derivative use immunity” is immunity from prosecution directly or indirectly resulting from the compelled testimony as well s immunity from the use of the evidence derived from the testimony.