DONALDSON, Judge,
concurring in part and dissenting in part in the rationale and dissenting from the judgment.
I agree with the analysis and conclusion of the main opinion insofar as it holds that this court has subject-matter jurisdiction over Christopher' Okafor’s appeal. Because my review of the evidence leads me to conclude that Okafor failed to present substantial evidence to overcome the motion for a summary judgment filed by the State of Alabama (“the State”), I would affirm the judgment of the Madison Circuit Court (“the trial court”). Therefore, I respectfully dissent.
Okafor contends that investigators of the Madison-Morgan County Strategic Counter Drug Team (“SCDT”) and the Madison County District Attorney’s Office failed to inform him of his rights pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He also contends that the search of Shanna Hereford’s residence was unreasonable, that the *84 SCDT investigators lacked probable cause to search the residence, that the SCDT investigators were not provided consent to enter the home, that consent to -search the home was not knowingly,. intelligently, and/or freely given, and that the State failed to present any evidence in support of its’ summary-judgment motion to establish that the $16,500 in cash discovered during the search (“the currency”) was connected to an illegal transaction pursuant to § 20-2-93, Ala.Code 1975.
A. Application of Miranda v. Arizona
As a threshold matter, I note that Oka-for’s argument concerning the application of Miranda is not properly presented for this court’s review on appeal pursuant to Rule 28(a)(10), Ala. R.App.P. It is well settled that “[t]his court will address only those issues properly presented and for which supporting, authority has been cited.” Asam v. Devereaux, 686 So.2d 1222, 1224 (Ala.Civ.App.1996). “Rule 28(a)(10) requires that arguments in briefs contain discussions of facts and relevant legal authorities that, support the party’s position. If they do not, the arguments' are waived.” White Sands Grp., L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1058 (Ala.2008). In his brief to this court, Okafor cites Miranda arid other cases holding that statements made by a person in custody in violation of the principle stated in Miranda cannot be used by the prosecution, in criminal proceedings. Even assuming that a violation of the Miranda requirements could,; in an appropriate case, bar the forfeiture of an asset in a civil proceeding, see Williams v. State, 674 So.2d 591, 593 (Ala.Civ.App. 1995), Okafor does not identify in his brief on. appeal any statements that were made by him or any other person purportedly in violation of the Miranda requirements. Okafor cites various- legal authorities relating to custodial interrogation; however, he fails to discuss any facts or present any legal argument regarding whether the person making a statement to the SCDT investigators was in custody when the statement was made, and he fails to present any' facts • or present any legal argument regarding the effect of a violation of the Miranda requirements on the legality of any search and/or on the connection between the currency and any illegal transactions. More specifically, Okafor never mentions or addresses in his brief the statement he made to Investigator Matt Thornbury denying that' he lived in the residence or any statements or actions he took in pointing out the location of the marijuana in the house, and he does not address, whether that evidence should have been excluded based on Miranda. Accordingly, I would conclude that Okafor has failed to present a sufficient argument to this court that Miranda was applicable to the proceedings or that the judgment must be reversed based on the principles of that case.
Even assuming that Okafor has. not waived this argument on appeal, I would conclude that Okafor failed to present substantial evidence to establish that he was in custody and entitled to the procedural safeguards under Miranda. In Miranda, 384 U.S. at 444, the United States Supreme Court held, in pertinent part:
“[T]he prosecution may not use statements, whether exculpatory or incul-patory, stemming from custodial inter-rógation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody. or otherwise deprived of his freedom of action in any significant way.”
*85 See also Harris v. State, 376 So.2d 773, 774 (Ala.Crim.App.1979)(“Miranda is limited to custodial interrogations only. Custodial interrogation is defined as ‘questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.’ Miranda, [384 U.S. at 444,] 86 S.Ct. at 1612.”).
Our Court of Criminal Appeals has stated:
“Miranda warnings are not required unless the suspect has been arrested or is in custody.
“ ‘ “Miranda warnings are not necessarily required to be given to everyone whom the police question. Oregon v. Mathiason, 429 U.S. 492 [493-95], 97 S.Ct. 711, 713, 50 L.Ed.2d 714 (1977). Miranda is only applicable when an individual is subjected to custodial interrogation. Davis v. Allsbrooks, 778 F.2d 168, 170 (4th Cir. 1985); Primm v. State, 473 So.2d 1149, 1158 (Ala.Crim.App.), cert. denied, 473 So.2d 1149 (Ala.1985). By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or-otherwise deprived of his freedom of action in any significant way.’ Miranda, supra, 384 U.S. at 444, 86 S.Ct. at 1612.
“‘“There is - a distinction which must be made between general interrogation and custodial interrogation since Miranda is inapplicable when interrogation is merely investigative rather than accusative. Kelley v. State, 366 So.2d 1145, 1148 (Ala.Crim.App.1979); Primm, supra, at 1158; Johnston v. State, 455 So.2d 152, 156 (Ala.Crim.App.) cert. denied, 455 So.2d 152 (Ala.1984). This distinction should be made on a case-by-case basis after, examining all of the surrounding circumstances. United States v. Miller, 587 F.Supp. 1296, 1299 (W.D.Pa.1984); Johnston, supra, at 156; Warrick v. State, 460 So.2d 320, 323 (Ala.Crim.App.1984); Hall v. State, 399 So.2d 348, 351-52 (Ala.Crim.App.1981); Kelley, supra at 1149.
“‘“The United States Supreme Court in California v. Beheler, 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983) articulated ‘the standard by which “custody” is to be judged.’ Davis, supra at 171. In its opinion, thé Supreme Court stated that ‘although the circumstances of each case must certainly influence a determination of whether a suspect is “in custody” for purposes of receiving Miranda protection, the ultimate inquiry is simply whether there is a “formal arrest or restraint on freedom of movement” of the degree associated with a formal arrest.’ California v. Beheler, supra, 463 U.S. at 1125, 103 S.Ct. at 3519-20 (quoting Mathiason, supra, 429 U.S. at 495, 97 S.Ct. at 714). See also Primm, supra, at 1158.
“‘,“A determination of ‘custody’ is not based on ‘the subjective evaluation of the situation by the defendant or the police officers.’ Davis, supra at 171. Where there has not been a formal arrest (as here), an objective test is used to determine whether the suspect’s freedom of action has been restricted by the police in any significant manner. Davis, supra at 171; Miller, supra at 1299; Warrick, supra at 322; Hall, supra at 351. ‘The only relevant inquiry is how a reasonable man in the suspect’s position would have understood his position.’ United States v. Jonas, 786 F.2d 1019, 1022 (11th Cir.1986) (quoting Berkemer v. McCarty, 468 U.S. 420 [442-44], 104 *86 S.Ct. 3138, 3152, 82 L.Ed.2d 317 (1984)).”’
“Smolder v. State, 671 So.2d 757 (Ala.Cr.App.1995) (quoting Hooks v. State, 534 So.2d 329, 347-48 (Ala.Cr.App.1987)).
“ Tn order to decide if a suspect is “in custody,” the court, looking at the totality of the circumstances, must find that a reasonable person in the accused’s position would believe that he or she is not free to leave. Landreth [v. State], 600 So.2d [440,] 444 [ (Ala.Cr.App.1992)].
“‘“In deciding whether the questioning of a suspect is ‘custodial’ the following factors should be considered:
“ ‘ “ ‘whether the suspect was questioned in familiar or neutral surroundings, the number of law enforcement officers present at the scene, the degree of physical restraint of the suspect, the duration and character of the questioning, how the suspect got to the place of questioning, the language used to summon the suspect, the extent to which the suspect is confronted with evidence of guilt, and the degree of pressure applied to detain the suspect.” ’
“‘600 So.2d at 444, quoting P.S. v. State, 565 So.2d 1209, 1214 (Ala.Cr.App.1990).’
“Johnson v. State, 673 So.2d 796[, 798] (Ala.Cr.App.1995).”
State v. Jude, 686 So.2d 528, 532-33 (Ala. Crim.App.1996).
Examining the totality of the circumstances surrounding the search and seizure, as those circumstances are described by Thornbury and Hereford in their respective affidavits, I would conclude that Okafor failed to present substantial evidence indicating that a reasonable person in his position would believe that he or she was not free to leave. According to Thornbury’s affidavit, the SCDT investigators’ initial purpose for coming to the residence was to serve a trial subpoena on Okafor and not to arrest or question the occupants of the residence or to conduct a search of the residence for contraband. This testimony is undisputed. Furthermore, there is no evidence showing that the SCDT investigators physically restrained Okafor or placed him under formal arrest. The SCDT investigators questioned Okafor and Hereford within the residence, a location that Hereford states in her affidavit was her and Okafor’s home. There is no indication regarding the length of the questioning, although the uncontested testimony shows that, upon being questioned regarding the presence of marijuana in the house, Okafor answered in the affirmative.
Hereford stated in her affidavit that four SCDT officers entered the residence “[w]ith loud voices, yelling, carrying weapons and using physical force they intimidated me and assaulted me by pushing me back into my home as they unlawfully entered” and that “the police officers were aggressive and induced fear in me.” She stated that “I was told the police were not going to leave my home until they searched it. My written consent was not freely given to them inasmuch as I was threatened they would not leave my home unless it was searched.” Perhaps Hereford’s testimony constitutes substantial evidence to establish that, as to her circumstances, her freedom of action had been restricted. But Hereford is not the defendant in this forfeiture case.
Regarding Okafor, however, there is no evidence showing that he was threatened, assaulted, fearful, or intimidated. Instead, the undisputed evidence shows that Okafor was in another part of the residence, i.e., “the downstairs den area of the residence,” *87 when the SCDT investigators entered the residence and that, once they entered the residence, the SCDT investigators announced for Okafor. The only evidence offered regarding Okafor’s circumstances was Hereford’s testimony that “[o]ur freedom was constrained at the time of the unlawful search, and at the time they asked us questions,” but she fails to acknowledge precisely how Okafor’s freedom had been constrained. Thus, I would not reverse the trial court’s summary judgment based on Okafor’s Miranda argument.
B. Standing To Contest the Legality of the Search
The State contends that Okafor lacks standing to challenge the warrantless search because he did not have a legitimate expectation of privacy in the residence. The State moved for a summary judgment on its claim seeking forfeiture of the currency and established a prima facie case. In his answer, Okafor had asserted as a defense that “[t]he currency, as well as other evidence, was obtained by an illegal search and seizure.” The State presented testimony from Thornbury that Okafor denied having any possessory interest in the property that had been searched and in the currency that had been seized. The State did not have the burden of proving that Okafor did not have standing to assert a claim that the search violated his Fourth Amendment rights; the burden was on Okafor to prove that he has standing. “The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure. See Simmons v. United States, 390 U.S. 377, 389—90[, 88 S.Ct. 967, 19 L.Ed.2d 1247](1968); Jones v. United States, 362 U.S. 257, 261[, 80 S.Ct. 725, 4 L.Ed.2d 697] (1960).” Rakas v. Illinois, 439 U.S. 128, 130 n. 1, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). And it was not enough for Okafor to show that there were disputed facts concerning the manner in which the search of the premises was conducted or that the search may have been conducted in a manner contrary to law. Instead, he had to establish that his rights, not someone else’s rights, were violated:
“A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person’s premises or property has not had any of his Fourth Amendment rights infringed. Alderman [v. United States,] 394 U.S. [165] at 174 [89 S.Ct. 961, 22 L.Ed.2d 176 (1969) ]. And since the exclusionary rule is an attempt to effectuate the guarantees of the Fourth Amendment, United States v. Calandra, 414 U.S. 338, 347[, 94 S.Ct. 613 (1974)], it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule’s protections.”
Rakas v. Illinois, 439 U.S. at 134.
As the United States Supreme Court has held:
“Since the decision in Katz v. United States, 389 U.S. 347[, 88 S.Ct. 507, 19 L.Ed.2d 576] (1967), it has been the law that ‘capacity to claim the protection of the Fourth Amendment depends ... upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place.’ Rakas v. Illinois, 439 U.S. 128, 143[, 99 S.Ct. 421, 58 L.Ed.2d 387] (1978). A subjective expectation of privacy is legitimate if it is ‘ “one that society is prepared to recognize as ‘reasonable,’ ”’ id., at 143-144, n. 12, quoting Katz, supra, at 361 (Harlan, J., concurring).”
Minnesota v. Olson, 495 U.S. 91, 95-96, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990).
*88 “ ‘An appellant wishing to establish standing to challenge the introduction of evidence obtained as a result of an alleged violation of the Fourth Amendment must demonstrate that he has a legitimate expectation of privacy in the area searched. Cochran v. State, 500 So.2d 1161 (Ala.Cr.App.1984), rev’d in part on other grounds, 500 So.2d 1179 (Ala.1985), on remand, 500 So.2d 1188 (Ala.Cr.App.1986), aff'd, 500 So.2d 1064 (Ala.1986), cert. denied, 481 U.S. 1033, 107 S.Ct. 1965, 95 L.Ed.2d 537 (1987).... “A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed.” Rakas v. Illinois, 439 U.S. 128, 134, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978). “For a search to violate the rights of a specific defendant, that defendant must have a legitimate expectation of privacy in the place searched, and the burden is squarely on the defendant asserting the violation to establish that such an expectation existed.” Kaercher v. State, 554 So.2d 1143, 1148 (Ala.Cr.App.), cert. denied, 554 So.2d 1152 (Ala.1989).'
“Harris v. State, 594 So.2d 725, 727 (Ala. Crim.App.1991).
“ ‘ “No one circumstance is talis-manic to the Rakas inquiry. ‘While property ownership is clearly a factor to be considered in determining whether an individual’s Fourth Amendment rights have been violated, property rights are neither the beginning nor the end of ... [the] inquiry.’ United States v. Salvucci, 448 U.S. 83, 92, 100 S.Ct. 2547, 2553, 65 L.Ed.2d 619, 628 (1980) (citation omitted). Other factors to be .weighed include whether .the defendant has a pos-sessory interest in the thing seized or the place searched, whether he has the right to exclude others from that place, whether he has exhibited a subjective expectation that it would remain free from governmental invasion, whether he took normal precautions to maintain his privacy and whether he was legitimately on the premises, See, id.; Rawlings v. Kentucky, 448 U.S. 98, 100 S.Ct. 2556, 2559, 65 L.Ed.2d 633 (1980); Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).”
“‘United States v. Haydel, 649 F.2d 1152, 1155 (5th Cir.1981), cert. denied, 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 140 (1982).
[[Image here]]
Ownership; or a possessory interest in property seized, while relevant in determining whether a defendant’s Fourth Amendment rights have been violated, is not sufficient alone to warrant a finding that the defendant had a reasonable expectation of privacy in the place where the property was discovered. Rawlings v. Kenucky, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); Ramires v. State, 492 So.2d 615 (Ala.Cr.App.1985).’
“Kaercher v. State, 554 So.2d 1143, 1148-50 (Ala.Crim.App.1989).”
Jones v. State, 946 So.2d 903, 919-20 (Ala. Crim.App.2006).
“This court has applied the same principles regarding standing discussed in ... criminal case[s], in a civil-forfeiture case.” Kevin Sharp Enters., Inc. v. State ex rel. Tyson, 923 So.2d 1117, 1121 (Ala.Civ.App. 2005). See also Johnson v. State, 667 So.2d 105 (Ala.Civ.App.1995). In Kevin Sharp Enterprises, this court, in affirming a. summary judgment» held that the party contesting the forfeiture had no legitimate *89 expectation of privacy where it had a pos-sessory interest in the property seized but had no possessory interest in the property when law enforcement had conducted the search pursuant to a warrant. In the present case, at first blush, the evidence presented in support of and in opposition to the motion for a summary judgment appears to be contested as it relates to Okaforis possessory interest in the residence. The State presented Thornbury’s testimony that Okafor, before the search, denied that he was a resident of the home that the SCDT investigators searched. Hereford, on the other hand, testified in her affidavit that she and Okafor lived in the residence with their children. Whether the trial court’s summary judgment was proper, however, hinges on whether, by denying that he lived in the residence and by directing officers to the marijuana in the residence, Okafor waived any legitimate expectation of privacy he may have had in the residence or whether, regardless of his denial, Okafor continued to have a legitimate expectation of privacy in the residence.
There is a split among jurisdictions that have addressed this issue. Some appellate courts have held that a person who disavows a possessory interest in a residence is not necessarily precluded from challenging the legality of a subsequent search of that residence. See, e.g., United States v. Vega, 221 F.3d 789, 797 (5th Cir.2000)(“We do not agree that [the defendant’s] fourth amendment rights evaporated simply because, he failed to make incriminating admissions in response to police questioning.”), abrogated on other grounds, as recognized in United States v. Aguirre, 664 F.3d 606, 611 n. 13 (5th Cir. 2011); United States v. Brown, 64 F.3d 1083, 1085 (7th Cir.1995)(“The privacy interest in a dwelling is not so easily extinguished, ... and a misleading response to an officer’s question is a far cry from a consent to search.”); United States v. Isaacs, 708 F.2d 1365, 1368 (9th Cir.1983) (“[The defendant’s] denial of ownership should not defeat , his legitimate expectation of privacy in the space invaded and thus, his right to contest the lawfulness of the search when the government at trial calls upon the jury to reject that denial.”). See also Commonwealth v. Sandler, 368 Mass. 729, 335 N.E.2d 903 (1975); State v. Sodoyer, 156 N.H. 84, 87, 931 A.2d 548, 551 (2007). As discussed in detail below, however, I would conclude that a person may lose standing to challenge a search of a residence and seizure of property found within the residence when that person, among other relevant factors, has disr claiméd a possessory interest in the residence.
In Jones, supra, the defendant, who had been convicted of capital murder for killing his parents, contended that the trial court improperly admitted evidence that law-enforcement officers had seized from his parents’ residence during a warrantless search. In determining whether the defendant had a legitimate expectation of privacy in the residence in order to have the proper standing to make the contention, our Court of Criminal Appeals held:
“Although the appellant testified, that he used his parents’ address as his address on various documents, that he had stayed in the ... residence at various times during the previous year, and that he had a room with his personal belongings in the ... residence, he also admitted that he had lived in Destín, Florida, for the three months before the murders; that his parents had told him to leave their residence on January 29, 2004; and that he did not think he had permission to return to his parents’ residence after they told him to leave. In addition, the State presented testimony that the appellant’s parents told law en *90 forcement officers that they did not want the appellant at their residence and asked that they remove him from the premises. Finally, the appellant told [Officer] Davenport that he lived in a condominium in Destín, Florida. Based on the evidence presented, the trial court properly concluded that the appellant did not have a legitimate expectation of privacy in the ... residence and, thus, did not have standing to challenge the search and seizure with regard to that residence.”
Jones, 946 So.2d at 921.
In United States v. Sweeting, 933 F.2d 962, 964 (11th Cir.1991), the defendants, before a search of the residence that revealed contraband and personal documents identifying the defendants, told law-enforcement officers that they did not live in the residence. The Eleventh Circuit Court of Appeals held:
“The Sweeting brothers each denied any relationship with the property when arriving at the residence. They maintained that they had always lived at their mother’s residence ... and that the subject premises was rented by their mother as a residence for their grandmother. The fact that they had temporary access to the premises along with several other members of their family and had some personal effects there does not establish the requisite subjective expectation of privacy to assert standing when coupled with them explicit disclaimer of ownership or interest. United States v. McBean, 861 F.2d 1570, 1574 (11th Cir.1988) (per curiam); United States v. McKennon, 814 F.2d 1539 (11th Cir.1987); United States v. Hawkins, 681 F.2d 1343, 1345 (11th Cir.), cert. denied, 459 U.S. 994, 103 S.Ct. 354, 74 L.Ed.2d 391 (1982). Under these circumstances, the position taken by the defendants to establish standing is not analogous to establishing status vis-a-vis the property as an overnight guest. See Minnesota v. Olson, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). They denied having any relationship to the premises except access.”
Sweeting, 933 F.2d at 964 (footnote omitted).
The Tennessee Supreme Court has also addressed the effect that a disclaimer of ownership had on the expectation of privacy in a hotel room, stating as follows in State v. Ross, 49 S.W.3d 833 (Tenn.2001):
“ ‘[W]hen one disclaims interest in the premises or possessions searched or in the articles seized he cannot question the legality of the search and seizure .... ’ Bowman v. State, 211 Tenn. 38, 41, 362 S.W.2d 255, 257 (1962). In fact, at least one of our previous decisions suggests that when a defendant disclaims an interest in the.object of a police investigation at the time of the search, then this fact alone will deprive a defendant of any expectation of privacy, irrespective of considerations such as ownership or possession. See Miller v. State, 520 S.W.2d 729, 733-34 (Tenn. 1975).
“Although at least one commentator has maintained that mere disclaimer of ownership, unlike actual abandonment of ownership, should not defeat an expectation of privacy, see 5 Wayne R. LaFave, Search and Seizure § 11.3(a), at 128, 187 (3d ed.1996) (specifically noting our decision in Miller), we continue to hold otherwise. In the vast majority of jurisdictions, courts have equated a denial or disclaimer of an interest in the object of a search with formal abandonment, because like abandonment, ‘[tjaken at face value, this denial makes it reasonable to conclude that the defendant claims no possessory interest’ in the object of the search. See, e.g., United States v. Basinsk *91 i, 226 F.3d 829, 837 (7th Cir.2000). In fact, several federal circuits have held that a disclaimer or denial of ownership ‘demonstrates sufficient intent of disassociation to prove abandonment,’ United States v. Lewis, 921 F.2d 1294, 1302 (D.C.Cir.1990), and because the concept of abandonment in Fourth Amendment jurisprudence is unlike that found in property law concepts, ‘abandonment’ here may be shown ‘merely [by] an intent voluntarily to relinquish [a] privacy interest....’ See United States v. Barlow, 17 F.3d 85, 87-88 (5th Cir.1994). Accordingly, we reaffirm that a defendant’s disclaimer of an interest in the object of a government investigation will result in a loss of the defendant’s subjective expectation of privacy in that object, irrespective of other considerations such as actual ownership or possession.
“Turning to the facts of this case, we conclude that the appellant’s conduct failed to exhibit an ‘actual (subjective) expectation of privacy* in the motel room. Katz [v. United States], 389 U.S. [347] at 361, 88 S.Ct. 507, 19 L.Ed.2d 576 [ (1967) ](Harlan, J., concurring). The trial court’s findings, which are supported by the weight of the evidence, demonstrate the following facts: (1) the appellant produced the key to room 132 from his sock voluntarily and without being asked to do so by any of the officers; and (2) the appellant not only denied ownership of the key to room 132 when asked, but he actually asserted that the key belonged to someone else. By disclaiming ownership of the key, the appellant effectively gave ‘the authorities the green light to proceed insofar as his own Fourth Amendment rights [were] concerned,’ see People v. Allen, 17 Cal.App.4th 1214, 21 Cal.Rptr.2d 668, 671 (1993), and this disclaimer, combined with his assertion that the room actually belonged to someone else, is sufficient evidence that he abandoned his otherwise reasonable expectation of privacy in the room. Accordingly, we hold that the trial court correctly denied the appellant’s motion to suppress the search of the motel room.”
49 S.W.3d at 841-43 (footnotes omitted).
In the instant case, the State supported its summary-judgment motion with Thorn-bury’s testimony that Okafor denied living at the residence and that Okafor directed officers to the location of the marijuana in the residence. In opposition to the motion, Okafor presented Hereford’s testimony that she and Okafor lived at the residence with their children. Okafor did not, however, dispute Thornbury’s testimony that Okafor told the SCDT officers, before the search, that he did not live at the residence. Okafor never disputed Thorn-bury’s testimony that he directed the SCDT investigators to the location of the marijuana within the residence. The evidence before the trial court at the time of the entry of the summary judgment shows that Okafor’s conduct at the time of the search failed to exhibit a legitimate expectation of privacy in the residence; in fact, the evidence was undisputed that he expressly disclaimed such an interest. See Ross, supra. Additionally, Okafor failed to show that he exhibited a subjective expectation that the residence would remain free from governmental invasion; to the contrary, as noted above, the uncontested testimony shows that Okafor cooperated with the SCDT investigators and directed them to the location of the marijuana that was in the residence. Furthermore, Oka-for presented no evidence to show that he had the right to exclude others from the residence and that he had taken normal precautions to maintain his privacy. I would hold that, based on the totality of circumstances, Okafor cannot now question the legality of the search and seizure. *92 Ross, 49 S.W.3d at 841, quoting Bowman v. State, 211 Tenn. 38, 41, 362 S.W.2d 255, 257 (1962). Therefore, I conclude that Okafor failed to meet his burden of demonstrating that he has standing to challenge the legality of the search of Hereford’s residence.
C. Connection to an Illegal Transaction
Okafor contends that the State failed to present any evidence in support of its summary-judgment motion to establish that the currency was connected to an illegal transaction.
In Gatlin v. State, 846 So.2d 1090 (Ala.Civ.App.2002), this court held:
“To establish a prima facie case under § 20-2-93(4), Ala.Code 1975, the State was required to prove
“that the money seized ;was: (1) furnished or intended to be furnished by [Gatlin] in exchange for a controlled substance; (2) traceable to such a transaction; or. (3) used or intended to be used, to facilitate a violation of any law of this state concerning controlled substances.” ’.
“Thompson v. State, 715 So.2d 224, 226 (Ala.Civ.App.1997) (quoting Wherry v. State ex rel. Brooks, 637 So.2d 890, 892 (Ala.Civ.App.1994)).
“The mere proximity of the drugs to the cash in Gatlin’s vehicle did not satisfy the State’s burden of proof. See Thompson v. State, supra. Our forfeiture cases have found the following circumstances to be indicative of contemplated or completed drug transactions; a large quantity of drugs, see, e.g., Shepherd v. State, 664 So.2d 238 (Ala.Civ.App.1995) (21 pounds of marihuana); drugs packaged for sale, see, e.g., Pointer v. State, 668 So.2d 41 (Ala.Civ.App.1995); drug paraphernalia or. accouterments indicating sale, such as ‘baggies’ or scales, see, e.g., Johnson v. State, 667 So.2d 105, 108 (Ala.Civ.App.1995)....
“Our forfeiture cases have also remarked on the inherent incredibility of a defendant’s explanation for having in his or her possession a large quantity of cash. See, e.g., Harris v. State, 821 So.2d 177 (Ala.2001) (finding inherently incredible a defendant’s ' story, that the source of $120,000 in cash was a $90,000 payment. the defendant received upon her husband’s death 17 years earlier, an amount that the defendant said had increased to $120,000 despite the fact that the defendant admitted that she kept the money at home in shoe boxes and lent some to friends, but charged no interest). See also Vaughn v. State, 655 So.2d 1039, 1041 (Ala.Civ.App.1995) (noting that the defendant, who was found with a large amount of-cash, was unemployed and had ‘no visible 'means of support’).”
846 So.2d at 1092-93.
In the present case, Thornbury’s affidavit showed that SCDT investigators’ search of'the residence uncovered $15,000 in United States currency bundled in $5,000 stacks, $1,500 in another part of the home, numerous handguns, 92.5 grams of marijuana, a set of digital scales, and packaging materials for controlled substances located within' a hidden- compartment. Even viewing the evidence in a light most favorable to Okafor and drawing all reasonable inferences in his favor, I would conclude that the State made a prima facie showing that no genuine issue of material fact existed regarding the connection of the currency to prohibited activity as defined by § 20-2-93(4). Thus, I would hold that the burden shifted to Okafor to produce substantial evidence that a genuine issue of material fact existed.
Hereford’s, affidavit fails to rebut any of the circumstances present in this case that are indicative of a contemplated or com *93 pleted drug transaction. Instead, Hereford’s testimony focuses solely on the issue whether she gave consent to the SCDT investigators to search her residence. Okafor offered no explanation for the large quantity pf cash in response to the motion for a summary judgment filed by the State. Therefore, I would hold that Oka-for failed to meet his burden to defeat the State’s properly supported motion for a summary judgment.
PITTMAN, J., concurs.